IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CRAIG COLBOCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-4143-SAC |
| | ) |
| MORRIS COMMUNICATIONS | ) |
| COMPANY, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the court on plaintiff's motion to amend complaint (Doc. 32). Defendants have filed a timely memorandum in opposition to plaintiff's motion (Doc. 45), to which Plaintiff has filed a timely reply (Doc. 51). Plaintiff has also filed a motion for leave to file an amended reply (Doc. 64), which defendants have also opposed (Doc. 72). The court has considered the parties' arguments and is now prepared to rule.

**I.     Plaintiff's Motion for Leave to File an Amended Reply (Doc. 64)**

As a preliminary matter, because defendants based their opposition to plaintiff's motion for leave to file an amended reply primarily on the substance of the proposed amended reply, the court has little choice but to consider the substantive issues raised by the reply. In actuality, both plaintiff's proposed amended reply, and defendant's response to his motion for leave to file it, are more in the nature of additional briefing on the issues underlying plaintiff's proposed amendment than on the procedural issue of whether plaintiff should be allowed to file his amended reply. Rather than attempting to unlearn what it has had no choice but to read and consider, the court finds the better course to be to grant plaintiff's motion for leave to file his amended reply and then consider all of the

parties' filings, to either of the two pending motions, with respect to whether to grant plaintiff leave to amend.  For this reason, the court will grant plaintiff's motion for leave to file and amended reply and consider plaintiff's amended reply in its analysis of his motion for leave to amend.

## II.     Plaintiff's Motion to Amend Complaint (Doc. 32)

Fed. R. Civ. P. 15 controls the procedure for amending pleadings.  Because plaintiff seeks to amend his complaint after an answer has already been filed, he "may amend . . . only by leave of court or written consent of the adverse part[ies]; and leave shall be freely given where justice so requires."[1]  As defendants have filed a response in opposition to plaintiff's motion, there is no issue as to the consent of defendants to the proposed amendment.  It therefore remains for the court to determine if leave to amend should be granted under the circumstances presented.

The decision whether to grant leave to amend lies within the discretion of the trial court.[2]  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[3]  In this instance, plaintiff seeks to file a second amended complaint to add claims for retaliatory discharge and tortious interference.  Plaintiff also seeks to add several

---

[1] Fed. R. Civ. P. 15(a).

[2] *Stewart v. Bd. of Comm'rs for Shawnee County, Kan.*, 216 F.R.D. 662, 664 (D. Kan. 2003) (citing *Woolsey v. Marion Labs.*, 934 F.2d 1452, 1462 (10th Cir. 1991).

[3] *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. V. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

statutes that clarify its demand for damages for vacation and commission pay and to recast his claims for damages to conform with federal, rather than state law, procedures.

Defendants oppose plaintiff's proposed new claims for retaliatory discharge and tortious interference on the grounds of futility, and do not otherwise object to his requested amendments.[4] The court will, therefore, confine its analysis to whether plaintiff should be allowed to amend his complaint to add new claims for tortious interference and retaliatory discharge and will grant plaintiff's request for leave as unopposed with respect to his other amendments.

"The court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or otherwise fails to state a claim upon which relief may be granted."[5] In determining whether to grant such a motion, the issue "is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims."[6] "Thus, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."[7] Under Fed. R. Civ. P. 12(b)(6), the court will dismiss a cause of action only:

> if it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, or when an issue of law is dispositive. The court accepts all well-pleaded facts, as distinguished from conclusory

---

[4] Defendant's Opposition to Plaintiff's Motion to Amend His First Amended Petition (Doc. 45), at p. 1 ("Plaintiff's Motion to Amend should be denied to the extent he seeks to add claims for tortious interference and retaliatory discharge because Plaintiff fails to state a claim under either cause of action.").

[5] *Stewart*, 216 F.R.D. at 664.

[6] *Id.* at 665 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984).

[7] *Id.*

3

allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.[8]

### A.     Plaintiff's Claim for Retaliatory Discharge

Defendants argue that plaintiff's proposed claim for retaliatory discharge is futile because it fails to state a claim upon which relief may be granted. It was initially unclear whether plaintiff was asserting his retaliatory discharge claim under Kansas common law or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). In his amended reply, plaintiff concedes that he did not properly preserve a claim for retaliatory discharge under Title VII and is, therefore, barred from bringing such a claim.[9]

Plaintiff contends that to prevail on a claim for retaliatory discharge under Kansas common law plaintiffs must demonstrate either: "(1) that Kansas courts have recognized their retaliatory discharge claims as exceptions to its employment at will doctrine or (2) that Kansas public policy protects the conduct on which their retaliatory discharge claims are based and that they have no alternative state or federal remedy."[10] Plaintiff concedes that it does not appear that Kansas courts have recognized his claim as an exception to the employment at will doctrine;[11] however, he contends that an extension of

---

[8]*Id.* at 664-65.

[9] Plaintiff's Amended Response to Defendants' Opposition to Amend the First Amended Petition (Attachment 1 to Doc. 64), at ¶ 2 ("In fact, Plaintiff never filed a formal complaint with the EEOC for retaliatory discharge and therefore his claim for retaliatory discharge under Title VII is effectively barred.").

[10] *Id.* at ¶ 3 (quoting *Litton v. Maverick Paper Co.*, 354 F. Supp. 2d 1209, 1216 (D. Kan. 2005).

[11] *Id.*

existing law is likely to protect the conduct upon which his claim is based on public policy grounds.[12] The court does not agree.

As defendants correctly identify, "Kansas courts have limited a cause of action for retaliatory discharge in violation of public policy to two circumstances: (1) where an employee is discharged in retaliation for exercising or intending to exercise his or her rights under worker's compensation laws; and (2) where an employee is discharged for good faith reporting or threatening to report the employer's serious infraction of rules, regulations, or law pertaining to public health, safety, and the general welfare."[13]

With respect to his claim for retaliatory discharge, in his proposed Second Amended Complaint, plaintiff alleges:

> The defendants' actions of terminating plaintiff . . . constitute . . . retaliatory discharge as Plaintiff complied with the corporate mandate to cut the payroll. when females complained through Title VII. The defendants retaliated by blaming plaintiff for the Anschutz, Annette, and Lacey termination, when Defendants knew they ordered the budget cuts, in part by failing to defend Plaintiff in the Title VII investigation, and/or exercised his due process rights.[14]

This appears to the court to indicate that plaintiff is alleging defendants retaliated against him for following defendants' instructions to cut pay roll because his doing so ultimately resulted in complaints of sexual harassment against plaintiff by certain female employees. The court fails to see how this

---

[12] *Id.* at 4.

[13] Defendant's Opposition to Plaintiff's Motion to Amend His First Amended Petition (Doc. 45), at p. 1 (citing *Aiken v. Business & Indus. Health Group, Inc.*, 886 F. Supp. 1565, 1573 (D.Kan. 1995) (citing *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 176-77 (1994))).

[14] Proposed Second Amended Complaint (Doc. 32-2), at ¶ 43.

establishes that plaintiff was terminated in retaliation for either exercising, or intending to exercise, any rights under the Kansas workers' compensation laws, or for any type of good faith reporting, or threat to report, defendants' serious infraction of rules, regulations, or law pertaining to public health, safety, and the general welfare.

In his amended reply, plaintiff characterizes the retaliation he believes he has suffered as follows: "Here, the defendants believed that Mr. Colboch would speak against corporate about their lack of training and terminated him before he was able to make such allegations."[15]  The court first takes issue with whether this formulation of plaintiff's theory is even consistent with the allegations he makes with respect to retaliatory discharge in his amended complaint.

Assuming *arguendo* that plaintiff's allegations would support this theory of his claim and that defendants' alleged failure to provide sexual harassment training would rise to the level of a serious infraction of rules, regulations, or the law pertaining to public health, safety, and the general welfare, plaintiff's claim would still fail because he has not alleged facts to demonstrate that defendants acted in response, either to his good faith reporting of their conduct, or any threat by him to do so.  Rather, plaintiff appears to have concluded that, because he believes he could have engaged in such reporting, defendants must have also believed he could have done so and terminated him for that reason.  He does not allege facts to demonstrate that defendants manifested an awareness of any such potential reporting, and he does not claim to have threatened them with any such reporting.  As such, he is

---

[15] Plaintiff's Amended Response to Defendants' Opposition to Amend the First Amended Petition (Attachment 1 to Doc. 64), at ¶ 7.

merely speculating that defendants *might have* terminated him for what they *might have* believed he *might have* been going to report, without alleging any facts to support these multiple inferences.

Moreover, if court were to accept plaintiff's inferences to be capable of being proven, plaintiff has also failed to identify that any such reporting on his part would be in furtherance of a clear mandate of Kansas public policy. "Before courts are justified in declaring the existence of public policy . . . it should be so thoroughly established as a state of public mind, so united and so definite and fixed that its existence is not subject to substantial doubt."[16]  Plaintiff has not identified exactly what public policy he contends would have been furthered by any comments he might have made, had he not been terminated.

It appears to the court that his contention is that, but for his termination, he would have spoken out with regard to how defendants trained their employees with respect to sexual harassment and conducted investigation of sexual harassment complaints, and, as such, would have furthered a policy in favor of proper sexual harassment training being given and proper investigations of complaints of sexual harassment being conducted.[17]  While it is clearly plaintiff's opinion that defendants violated the standards for such training and investigation pursuant to E.E.O.C. guidelines and their own employee handbook, he fails to identify any authority for the proposition that his interpretation of what defendants

---

[16] *Aiken*, 886 F. Supp. at 1574 (citing *Palmer v. Brown*, 242 Kan. 893, 897 (1988); *Dickens*, 255 Kan. at 164).

[17] *See* Plaintiff's Amended Response to Defendants' Opposition to Amend the First Amended Petition (Attachment 1 to Doc. 64), at ¶ 5(j),(k),(l),(m), and (n).

7

should have done is a public policy of the state of Kansas.[18]  Absent such a showing, the court cannot conclude that any comments he might have made, even were the mere potential for such comments enough to be considered protected activity, would have been in furtherance of Kansas public policy.

Because the court finds that plaintiff has not alleged any conduct of his that is, or is likely to constitute, protected activity, the court concludes plaintiff's proposed claim for retaliatory discharge is futile because it fails to state a claim upon which relief may be granted.  As such, the court will deny plaintiff leave to amend with respect to his proposed claim for retaliatory discharge.

### B. *Plaintiff's Claim for Tortious Interference*

Plaintiff also seeks to add a claim of tortious interference based upon defendants' alleged interference with both, the existing implied employment contract between themselves and plaintiff, and a prospective business advantage or relationship plaintiff would, but for defendants' interference, have experienced through re-employment in the local geographic community.[19]

As a preliminary matter, the court notes that "[a] claim for tortious interference with a contractual relationship requires the existence of a valid and enforceable contract at the time of the interference between the plaintiff *and a third party*."[20]  Therefore, to the extent that plaintiff's proposed

---

[18] *See Aiken*, 886 F. Supp. at 1574 (discussing that a plaintiff's own unsupported opinions as to how a law should be carried out do not constitute public policy); *see also Cain v. Kansas Corp. Comm'n*, 9 Kan. App. 2d 100, 104-05 (1983).

[19] Proposed Second Amended Complaint (Doc. 32-2), at ¶¶ 42 and 91-93.

[20] *Macke Laundry Serv. Ltd. P'ship v. Mission Assocs., Ltd.*, 19 Kan. App. 2d 553, 561 (1994) (emphasis added) (citing Prosser and Keeton, Law of Torts § 129, p. 994 (5th ed. 1984); *see also Noller v. General Motors Corp.*, 244 Kan. 612, 620 (1989).

claim is based upon defendants' alleged interference with an existing agreement to which they are a party, it is futile because it fails to state a claim upon which relief may be granted.

With respect to the remaining aspects of plaintiff's proposed claim, to prevail on a claim for tortious interference with a prospective business relationship or advantage, a plaintiff must prove: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, the plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional conduct by the defendant; and (5) damages suffered by the plaintiff as a result of the defendant's misconduct.[21]  In addition to the foregoing, the plaintiff must also prove malicious conduct by the defendant.[22]

As defendants correctly identify, plaintiff's proposed Second Amended Complaint "fails to plead any facts establishing: (1) the existence of any specific prospective contracts or employment relationships that Plaintiff has a reasonable expectancy of receiving; (2) Defendants' specific knowledge of any of Plaintiff's prospective contracts or employment relationships; or (3) any specific conduct in which Defendants, or anyone acting on their behalf, allegedly engaged to induce or otherwise cause a breach of the purported contracts or employment relationships."

To comply with the notice pleading requirements of Fed. R. Civ. P. 8, plaintiff need only provide a "short and plain statement" of his claim showing that he is entitled to relief.  Additionally, as

---

[21] *See* PIK–Civil 3d § 124.92; *see also Turner v. Halliburton Co.*, 240 Kan. 1, 12 (1986).

[22] *See id.*; *see also Turner*, 240 Kan. at 12.

noted above, the court accepts all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.[23]

In paragraph 93 of his proposed Second Amended Complaint, plaintiff alleges:

> That there was an existence of a business relationship or expectancy with the probability of future economic benefit to the Plaintiff; that Defendants had knowledge of the relationship or their expectance thereof; that except for the conduct of Defendants, the Plaintiff was reasonably certain to have continued the relationship or realized the reemployment in his career in a local geographical community; there was intentional conduct by the Defendants; and Plaintiff suffered damages as a result of Defendants' misconduct.

Plaintiff alleges no facts to support these conclusory allegations and makes no allegation, conclusory or otherwise, that defendants acted with malice to interfere with any prospective business relationship or expectancy he may have had. As such, there are no facts for the court to either accept in their own right, or upon which to found inferences, with respect to plaintiff's ability to prove his claim, and no facts to provide defendants with notice of what plaintiff believes constitutes their tortious interference his prospective business relationship or expectancy.

Elsewhere in his proposed complaint, plaintiff does allege that defendants made "defamatory allegations and conclusions regarding plaintiff;" however, there is no assertion that such statements were made to persons or entities with which plaintiff had any prospective business relationship or expectancy, resulted in plaintiff's loss of any prospective business relationship or expectancy, or were intentionally made by defendants for the purpose of interfering with any business relationship or expectancy.[24]

---

[23] *Stewart*, 216 F.R.D. at 664-65.

[24] *See* Proposed Second Amended Complaint (Doc. 32-2), at ¶¶ 42, 44, 77, and 78.

Therefore, because plaintiff fails to allege any facts in support of his claim of tortious interference with a prospective business relationship or expectancy, the court finds that his claim does not comply with the Fed. R. Civ. P. 8, does not state a claim upon which relief may be granted, and is, as a result, futile. As the court has now found plaintiff's proposed tortious interference claim to be futile, both with respect to the existing relationship between plaintiff and defendants, and also with respect to plaintiff's prospective business relationship or expectancy, the court will deny plaintiff leave to amend with respect to his proposed claim for tortious interference.

### III.  Conclusion

Based upon the foregoing, the court concludes that plaintiff's motion for leave to file an amended reply (Doc. 64) shall be granted. The court further concludes that plaintiff motion to amend complaint (Doc. 32) shall be denied with respect to plaintiff's request to add claims for retaliatory discharge and tortious interference and granted with respect the remainder of plaintiff's proposed amendments.

Because the court's decision to deny plaintiff leave to amend with respect to his assertion claims for retaliatory discharge and tortious interference has the identical effect of an order dismissing those claims, it can be considered to be dispositive, and plaintiff is entitled to a *de novo* review of that decision by the presiding judge upon the filing of a written objection in accordance with Fed. R. Civ. P. 72(b) and D. Kan. Rule 72.1.4(b).[25]  In the event plaintiff wishes to exercise his right to such a *de novo*

---

[25] *See Cuenca v. University of Kansas*, 205 F. Supp. 2d 1226, 1228-29 (D. Kan. 2002) (holding that a magistrate judge's order denying leave to amend that has the effect of dismissing potential claims or parties from the lawsuit must be reviewed using a *de novo* standard).

review, he should follow the procedures outlined by Fed. R. Civ. P. 72(b) and D. Kan. Rule 72.1.4(b) for filing an objection to a magistrate judge's recommendation on a dispositive matter, and he should file such an objection within ten days of the entry of this order as calculated pursuant to Fed. R. Civ. P. 5 and 6, or on or before **August 21, 2006**.[26]

**IT IS THEREFORE ORDERED** that plaintiff's motion to amend complaint (Doc. 32) is hereby granted in part and denied in part. Plaintiff is directed to revise his Second Amended Complaint in accordance with the foregoing Memorandum and Order and file and serve it in accordance with the procedures set forth in D. Kan. Rule 5.4.1 on or before **August 11, 2006**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file an amended reply (Doc. 64) is hereby granted, and plaintiff's amended reply attached as an exhibit thereto (Doc. 64-2) is hereby deemed by the court to be filed.

**IT IS SO ORDERED.**

Dated this 2nd day of August, 2006, at Topeka, Kansas.

s/K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[26] *See* Fed. R. Civ. P. 72(b) ("Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations."); Fed. R. Civ. P. 6(a) ("When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."); Fed. R. Civ. P. 6(e) ("Whenever a party must or may act within a prescribed period after service and service is made under Rule 5(b)(2)(B), (C), or (D), 3 days are added after the prescribed period would otherwise expire under subdivision (a)."); Fed. R. Civ. P. 5(b)(2)(D) (Service may be effected by "[d]elivering a copy by other means, including electronic means . . . .").