# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CRAIG COLBOCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-4143-SAC |
| | ) |
| MORRIS COMMUNICATIONS | ) |
| COMPANY, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's motion to compel related to plaintiff's first request for production of documents and first interrogatories (Doc. 105).[1] Defendants have filed a timely response in opposition (Doc. 123), along with conventional exhibits in support (Doc. 131), to which plaintiff has timely replied (Doc. 135). The issues are, therefore, fully briefed and ripe for decision.

Plaintiff served his first request for production of documents and first interrogatories to defendants, by both electronic and First Class mail, on March 1, 2006.[2] Pursuant to Fed. R. Civ. P. 33, 34, 5, and 6, responses to plaintiff's requests were due by April 3, 2006. Defendants served their initial responses

---

[1] While plaintiff's motion states that it addresses discovery "Answers pursuant to Plaintiff's First Interrogatories" (Doc. 105, at p.1), it never specifically identifies or addresses any issues with respect to any of plaintiff's interrogatories. As such, the court's ruling will not address any of plaintiff's interrogatories or defendants' responses thereto. Similarly, plaintiff's motion also states: "Inherent in this Motion is a Motion to Reset Discovery Deadlines." (Doc. 105, at p. 1) However, plaintiff does not propose any new deadlines, or indeed make any other reference to deadlines, beyond this one vague statement. Because plaintiff does not argue or develop this request, and no specific need for changes to the discovery schedule are readily apparent to the court, the court will not alter the current discovery schedule at this time.

[2] *See* Certificate of Service (Doc. 30).

and objections to plaintiff's discovery requests on April 3, 2006.[3] Defendants served amended responses to plaintiff's request for production numbers 9, 15, 16, 20, 22, 27, 35, 36, 37, 38, 46, 57, 75, and 77 on April 26, 2006.[4] Plaintiff filed the instant motion to compel, on June 6, 2006, seeking to compel additional responses to his request numbers 1, 4-7, 11, 15, 16, 18, 19, 20-22, 25, 26, 28, 29-33, 36-38, 40, 48, 49, 51, 52, 54, 58, 59, 62, 63, 65, 73, 74, 76, 77, 79, 80, and 82. In plaintiff's reply, plaintiff states that he is abandoning his request to compel additional responses with regard to his request numbers 1, 6, 7, 11, 15, 16, 48, 49, 54, 58, 59, 65, 73, 77, 79, 80, and 82.

As preliminary matter, before turning the specific substance of plaintiff's requests and defendants' responses thereto, the court will examine certain of defendants' arguments regarding plaintiff's failure to adhere to the court's rules of practice and procedure in his filing of the instant motion.

Defendants contend that plaintiff's motion should be denied for failure to adhere to D. Kan. Rule 7.1(e), which provides that "'[t]he arguments and authorities section of briefs and memoranda submitted shall not exceed 30 pages absent an order of the court.'"[5] Plaintiff's motion is 43 pages long, exclusive of exhibits, and contains no discrete section providing argument and authorities. In his reply, plaintiff's counsel "acknowledges that he inadvertently exceeded the requisite page limitations."[6] While plaintiff's motion, as written, does exceed the page limitation pursuant to D. Kan. Rule 7.3(e), the actual substance of plaintiff's arguments and authorities, if segregated from the remainder of the contents of the motion, totals far less than

---

[3] *See* Certificate of Service (Doc. 31).

[4] *See* Certificate of Service (Doc. 60).

[5] Defendants' Response (Doc. 123), at § III.B.1. (quoting D. Kan. Rule 7.1(e)).

[6] Plaintiff's Reply (Doc. 135), at p. 2.

the 30-page limitation. As such, while the court does not excuse plaintiff's failure to comply with Rule 7.3(c), it will not deny consideration of plaintiff's motion on this basis.

Defendants next contend that plaintiff's motion should be denied for failure to adhere to D. Kan. Rule 37.1(b), which provides that "[a]ny motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 shall be filed and served within 30 days of the default or service of the response, answer, or objection which is the subject of the motion, unless the time for filing of such motion is extended for good cause shown." In this instance, plaintiff filed his motion on June 6, 2006. The objections that are the subject of plaintiff's motion were served by defendants on April 3, 2006 or April 26, 2006. As such, it initially appears that plaintiff's motion is untimely.

However, defendants continued to provide documents responsive to plaintiff's requests, including producing all documents bearing Bates Number D000663 and higher on or after May 5, 2006.[7] A review of defendants' production log reveals that, of the requests still at issue in plaintiff's motion to compel, documents responsive to request numbers 18, 19, 20, 21, and 37 were produced with Bates Numbers of D000663 or higher.[8] Because defendants served their additional production, on May 5, 2006, by mail rather than personal service, plaintiff is entitled to three extra days in which to file a motion to compel pursuant to Fed. R. Civ. P. 6(e).[9] As such, plaintiff could have properly filed a motion to compel directed at defendants' May 5, 2006-supplementation until and including June 7, 2006 – one day after the plaintiff's instant motion was filed.

---

[7] *See* Certificate of Service (Doc. 63).

[8] *See* Log of Documents Produced by Defendants to Plaintiff (Ex. 9 attached to Doc. 131).

[9] *See* Certificate of Service (Doc. 63).

The court does not see how plaintiff could have evaluated whether there was a need to file a motion to compel related to a request until he had been served with the documents defendants were willing to produce responsive to that request. Consequently, the court finds that plaintiff's time to file a motion to compel responses to his request numbers 18, 19, 20, 21, and 37 was renewed by defendants' production of additional documents responsive to those requests on or after May 5, 2006. The court finds that plaintiff's motion was filed too late to be effective with the respect to the balance of the requests at issue.

### Plaintiff's Request for Production Numbers 18, 19, 20, and 21

With respect to plaintiff's request numbers 18, 19, 20, and 21, plaintiff's requests and defendants' responses are as follows:

> **REQUEST NO. 18:** All monthly and year end documents of Defendants' 2000-2005, WIBW radio monthly and yearly profit and loss statements, including all journal entries, and other Defendants' radio, newspaper and magazine entities 2000-2005 yearly and monthly profit and loss statements (these are the monthly products of Defendants corporate wide profit and loss reports, including all Defendants' radio and television properties that Craig Colboch and Mr. Osterhout reviewed monthly.
> **RESPONSE:** Defendants object to this Request on the basis that it is vague, ambiguous, overly broad, unduly burdensome, and seeks documents not relevant to the temporal scope, claims or defenses at issue in this matter. Defendants also object to this Request to the extent it seeks confidential and proprietary information.
>
> **REQUEST NO. 19:** All monthly 2000-2005 summary and profit and loss statements of all Morris subsidiaries for all subsidiaries (newspaper, magazine, billboard, special publication, and all radio properties), (these documents had the yearly projections and year to date figures for all Defendants' radio and other properties).
> **RESPONSE:** Defendants object to this Request on the basis that it is overly broad and seeks documents not relevant to the temporal scope, claims or defenses at issue in this matter. Defendants also object to this Request to the extent it seeks confidential and proprietary information and seeks information about entities outside of Plaintiff's employing unit.

4

**REQUEST NO. 20:** All 2000-2005 documents concerning Defendants' monthly, and year end corporate profit and loss statements, prepared by Juliet Stern, or Carol Hill, or Jamie Annette for the Topeka Radio Group.
**RESPONSE:** Defendants object to this Request on the basis that it is vague, ambiguous, overly broad, unduly burdensome, and seeks documents not relevant to the temporal scope, claims or defenses at issue in this matter. Defendants also object to this Request to the extent it seeks confidential and proprietary information.
**SUPPLEMENTAL RESPONSE:** Defendants object to this Request on the basis that it is vague, ambiguous, overly broad, unduly burdensome, and seeks documents not relevant to the temporal scope, claims or defenses at issue in this matter. Defendants also object to this Request to the extent it seeks confidential and proprietary information.

Subject to and without waiving the foregoing objections, Defendants will produce the portions of WIBW's 2004 monthly reports that pertain to expenses, to the extent they exist and can be located upon reasonable inquiry, at a mutually agreeable date and location subject to the confidentiality agreement and protective order entered in this matter.

**REQUEST NO. 21:** Documents concerning Defendants' 2004 year end profit and loss statements of all Defendants' radio and other business entities.
**RESPONSE:** Defendants object to this Request on the basis that it is overly broad and seeks documents not relevant to the temporal scope, claims or defenses at issue in this matter. Defendants also object to this Request to the extent it seeks confidential and proprietary information and seeks information about entities outside of Plaintiff's employing unit.

Defendants object to request numbers 18 and 20 on the basis that they are vague and ambiguous. A party opposing discovery "bears the burden to support its objection with facts, and if necessary, affidavits and not merely with conclusions."[10] A "party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity."[11] "A party responding to discovery requests 'should exercise reason and common sense to attribute ordinary definitions to terms

---

[10] *Lawrence v. First Kan. Bank & Trust Co.*, 169 F.R.D. 657, 659 (D. Kan. 1996).

[11] *W. Res., Inc. v. Union Pac. R.R. Co.*, 2002 U.S. Dist. LEXIS 1004 (D. Kan. Jan. 21, 2002) (citing *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. Apr. 18, 2000)).

and phrases utilized in interrogatories.'"[12]  "If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue."[13]  Here defendants have not provided any further support for their objection beyond the mere conclusory statement that plaintiff's requests are vague and ambiguous.  The court, therefore, finds that defendants have not met their burden of demonstrating that plaintiff's request numbers 18 & 20 are vague and ambiguous.  Accordingly, defendants' objection is overruled.

Defendants also object to request numbers 18 and 20 on the basis that they are unduly burdensome.  In opposing discovery on the grounds of burdensomeness, a party has "the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[14]  "This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents."[15]  "Discovery should be allowed unless the hardship is unreasonable in light of the benefits to be secured from the discovery."[16]  However, the "mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and possibility of injury to the business of the party from whom discovery is sought

---

[12] *Id*.

[13] *Id*.

[14] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002).

[15] *Id*.

[16] *Employers Comm. Union Ins. Co. of Am. v. Browning-Ferris Indus.*, 1993 U.S. Dist. LEXIS 21098, at *17-18 (D. Kan. Apr. 5, 1993).

does not itself require denial of the motion."[17] Here defendants have not provided any details or estimate regarding the "time, money and procedure required to produce the requested documents" to substantiate their burdensomeness objection.[18] The court, therefore, finds that defendants have not met their burden of demonstrating that plaintiff's request numbers 18 & 20 are unduly burdensome. Accordingly, defendants' objection is overruled.

Defendants object to all four of the requests at issue to the extent they seek confidential and proprietary information. Confidentiality of documents "does not equate to privilege."[19] "As such, information is not shielded from discovery on the sole basis that such information is confidential."[20] The court finds that defendants' confidential and proprietary objection does not, by itself, suffice to shield documents from discovery, particularly in light of the fact that there is already a protective order in place to govern the use of confidential information in this case.[21] Accordingly, defendants' objection is overruled.

Defendants also object to all four of the requests at issue on the basis that they are overly broad and seek documents not relevant to the temporal scope, claims, or defenses at issue in this matter. A party objecting to discovery on the basis of overbreadth must support its objection, unless the request appears

---

[17] *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332-33 (D. Kan. 1991).

[18] *Horizon Holdings*, 209 F.R.D. at 213 (D. Kan. 2002).

[19] *Williams v. Board of County Comm'rs*, 2000 U.S. Dist. LEXIS 8986, at *16 (D. Kan. June 21, 2000).

[20] *Id*.

[21] *See* Protective Order (Doc. 16).

overly broad on its face.[22] Plaintiff was terminated in 2004 from his position as the general manager of all WIBW radio operations.[23] Plaintiff asserts that his termination violated an implied contract of employment that, he contends, arose in or about December 2004.[24] Defendants contend that "[p]laintiff was terminated in December 2004 for violation of Morris' sexual harassment policy and failure to meet the 2004 budget due to excessive expenses."[25]

Based upon the facts that plaintiff was employed as the general manager of WIBW operations, and that the events surrounding plaintiff's claims, and defendant's defenses thereto, occurred within the context of the operations of the WIBW radio group. The court finds that plaintiff's request numbers 18 and 20 are over broad on their face and not reasonably calculated to lead to the discovery of admissible evidence with respect to any information which is sought from defendants' business entities outside plaintiff's former employing unit.

While plaintiff has brought a claim for breach of an implied employment contract and not employment discrimination, he has alleged that defendants failed to conduct an impartial investigation of claims of sexual harassment made against him by other employees and that defendants had ulterior motives for conducting the investigation that lead to his termination.[26] These allegations cause this action to take

---

[22] *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999).

[23] First Amended Petition (Attachment 1 to Doc. 1), at ¶ 7.

[24] *See id.* at ¶¶ 22-23.

[25] Defendant's Response (Doc. 123), at p. 13.

[26] First Amended Petition (Attachment 1 to Doc. 1), at ¶¶ 24-26.

8

on some similar aspects to an employment discrimination case. The U.S. Court of Appeals for the Tenth Circuit has stated that "discovery in discrimination claims should not be narrowly circumscribed."[27] However, the "desire to allow broad discovery is not without limits . . . ."[28] Discovery in employment discrimination cases "is usually limited to information about employees in the same department or office[,] absent a showing of a more particularized need for, and the likely relevance of, broader information."[29] Plaintiff does not respond to defendants' arguments regarding the need to limit the requested discovery to plaintiff's former employing unit in his reply to their response in opposition. As such, the court can only find that he has not met his burden of showing "a more particularized need for, and the likely relevance of," the requested information from all of defendants' business entities.[30] The court will, therefore, not compel defendants' to produce any documents in response to plaintiff's request numbers 18 and 20 with regard to any business entities beyond plaintiff's former employing unit, WIBW Radio.

Based upon the fact that the event surrounding plaintiff's termination occurred and in and prior to December 2004, the court also finds that plaintiff's request numbers 18, 19, 20, and 21, are over broad on their face and not reasonably calculated to lead to the discovery of admissible evidence, insofar as they

---

[27] *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (citing *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343-44 (10th Cir. 1975)).

[28] *Id.*

[29] *Haselhorst v. Wal-Mart Stores*, 163 F.R.D. 10, 11 (D. Kan. 1995) (citation ommitted); *see also McCoo v. Denny's Inc.*, 192 F.R.D. 675, 687 (D. Kan. 2000) (stating that "in determining the geographic scope of discovery for non-class complaints, the focus should be upon the source of the complained discrimination, i.e., the unit or facility that employed the plaintiff, absent a showing of a more particularized need and relevance").

[30] *Haselhorst*, 163 F.R.D. at 11.

seek information for the entire period from 2000 to 2005. "[C]ourts have held that the discovery of information both before and after the alleged discrimination may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence."[31] Therefore, courts "will typically extend the scope of discovery to a reasonable number of years prior to and following the alleged discrimination."[32]

In this instance, plaintiff seeks information for the four years prior, and one year after, his termination. Defendants have attributed part of the reason for plaintiff's termination to his failure to meet the 2004 budget due to excessive expenses.[33] As such, the court finds that the financial records for the years 2000 to 2004, sought by plaintiff's requests, insofar as they relate to plaintiff's former employing unit, are capable of leading to the discovery of admissible evidence regarding issues of plaintiff's past job performance and the validity of defendants' complaints about his more recent job performance, which allegedly contributed to his termination. The court, however, fails to see how any financial documents for the year 2005 are reasonably likely to lead to the discovery of any admissible evidence.

Plaintiff responds to defendants' temporal scope arguments in his reply to their response in opposition, wherein he states:

> Defendants have testified that WIBW net profit did not follow a general upward pattern as its other radio groups did. We are entitled to the documents for possible impeachment. In addition, Defendants have affirmatively admitted, through Juliet Stern testimony that in 2004 the station made $37,000.00 and in 2005 made $100,000.00. Larry Riggins testified that his salary was $160,000.00 in 2005. Craig Colboch's salary and

---

[31] *Epling v. UCB Films, Inc*., 2000 U.S. Dist. LEXIS 21818, at *19 (D. Kan. Aug. 7, 2000).

[32] *Id*.

[33] Defendant's Response (Doc. 123), at p. 13.

10

commissions was $230,000.00 in 2004. The sixty to seventy thousand dollar difference appears to the reduction in salary of the general manager, not the profitability of the radio station. The Defendants have asserted the profitability of radio units outside WIBW. Plaintiff is entitled to impeach Defendant's assertions.[34]

Plaintiff's arguments miss the point. The current performance of WIBW, as it might potentially reflect on the impact of defendants' decision to terminate plaintiff, is not on trial in this case. In theory, defendants' could have terminated plaintiff because they believed his management was impeding the financial performance of the radio station and, instead of the expected improvement, seen revenues plummet and costs soar. This would certainly reflect on the wisdom, or lack thereof, of their business decision; however, it would be meaningless with regard to the question of whether or not their termination of plaintiff was legally proper. Moreover, the fact that plaintiff may have already obtained similarly irrelevant current financial in discovery from defendants cannot be bootstrapped into justifying further irrelevant inquiry on the basis of the need for impeachment. There is little need, or indeed opportunity, to impeach evidence that is inadmissibly irrelevant.

Because the court finds that the information sought by plaintiff's request numbers 18, 19, 10, and 21 for the years 2000 through 2004 is reasonably calculated to lead to the discovery of admissible evidence, it will compel defendants to make full production of any documents sought by those requests with regard to plaintiff's former employing unit, WIBW radio. Because the court does not find the same information for any time after plaintiff's termination to be similarly relevant, it will not require defendants to produce any documents for the year 2005.

---

[34] Plaintiff's Reply (Doc. 135), at p. 4.

11

The court will, therefore, grant plaintiff's motion to compel with respect to his request numbers 18, 19, 20, and 21; however, it will limit the necessary production to documents covering only the years 2000 through 2004 related to plaintiff's former employing unit, WIBW Radio.

**Plaintiff's Request for Production Number 37**

With respect to plaintiff's request for production number 37, plaintiff's request and defendants' responses are as follows:

> **REQUEST NO. 37:**  Produce copies of all payments of post termination or resignation commissions on future business on the books, for the following individuals: Steve Foreman; Kevin Mott; Bobby Baldwin; John Jenkinson; Dusty Workman; Christina Verbanic; Torri Morris; Bob Steffes; Frank Puls; Kyle Schdieman; Ole Reed; Deb martin; Deidre Weible; Patty Cheek; Ken Berg; Bill Kentling; and Rich Douglas.
>
> **RESPONSE:** Defendantt's object to this Request on the basis that it is overly broad and seeks documents not relevant to the temporal scope, claims or defenses at issue in this matter.  Defendants further object to this Request to the extent it seeks to invade the privacy of non-parties not similarly situated to Plaintiff.  Defendants have no right or privilege to freely disclose or disseminate individual personnel data or confidential information as to employees with no interest or standing in the litigation.
>
> **SUPPLEMENTAL RESPONSE:**  Defendantt's object to this Request on the basis that it is overly broad and seeks documents not relevant to the temporal scope, claims or defenses at issue in this matter.  Defendants further object to this Request to the extent it seeks to invade the privacy of non-parties not similarly situated to Plaintiff.  Defendants have no right or privilege to freely disclose or disseminate individual personnel data or confidential information as to employees with no interest or standing in the litigation.
>
> Subject to and without waiving the foregoing objections, Defendants refer Plaintiff to their response to Request No. 36.
>
> **SUPPLEMENTAL RESPONSE TO REQUEST NO. 36:** Defendants object to this Request on the basis that it is vague, ambiguous, overly broad and seeks documents not relevant to the temporal scope, claims or defenses at issue in this matter.  Defendants further object to this request to the extent that it seeks to invade the privacy of non-parties not similarly situated to Plaintiff.  Defendants have no right or privilege to freely disclose or disseminate individual personnel data or confidential information as to employees with no interest or standing in the litigation.

> Subject to and without waiving the foregoing objections, Defendants state that they have no documents responsive to this Request for Christina Verbanic, Torri Morris, Bob Steffes, Ole Reed, Deb Martin, Deidre Weible, or Rick Douglas. Further responding, Defendants will produce documents concerning the final pay (including vacation time and commissions) for the remaining individuals listed above, pursuant to the confidentiality agreement and protective order entered in this matter, at a mutually agreeable date and location.

Defendants expand upon their response to plaintiff's request number 37, in their response in opposition to his motion, wherein they state:

> Morris agreed to produce the payroll records and any other documentation concerning the final vacation pay and final commission payments to individuals listed in Request Nos. 36 and 37, to the extent they exist. After a reasonable inquiry, Morris could only locate final pay documentation for Patti Cheek, Kevin Mott, Dusty Workman, Frank Puls, Kenneth Berg, Robert Baldwin, and Kyle Schdieman. Morris produced the final pay documentation for the aforementioned individuals on April 28, 2006. (D584-D596.) On June 21, 2006, Morris supplemented its production to include additional final pay information for Christina Verbanic and Torri Morris and additional pay information for Kevin Mott that was recently located as a result of information learned during depositions in this matter. (D1231-1380.) Hence, Morris has produced all documents in it possession responsive to Request Nos. 36 and 37.[35]

Plaintiff, however, remains unconvinced that defendants have made full production to his request number 37. In his reply brief, he states:

> Defendants have not fully responded to Request No.(s) 36 and 37. Morris supplemented discovery responsive to this [*sic*] request subsequent to Plaintiff filing his motion to compel. However, Plaintiff does not believe they have fully complied with this [*sic*] request. Dusty Workman's employment was terminated on two different occasions; once prior to Mr. Colboch's termination and once following his termination. Carol Hill testified to the way she paid out accrued vacations and commissions following an employee's termination or

---

[35] Defendant's Response (Doc. 123), at pp. 9-10.

13

>resignation when she was employed by Defendants. She specifically testified that she did this for Dan Werner, Christina Verbanic, Torri Morris, and Dusty Workman.[36]

As defendants report that they have produced all documents responsive to plaintiff's request number 37, and do not assert that they are withholding an such production due to their objections, there is no purpose to be served in the court considering their prior objections. The statement that a party has produced all the documents in its possession responsive to a request for production is not an objection, and the court cannot compel production of documents that do not exist. Moreover, to the extent that a party later discovers additional responsive documents that have not been produced, it has a continuing obligation, pursuant to Fed. R. Civ. P. 26(e), to supplement its prior production and, should it fail to do so, it bears the risk of significant sanctions pursuant to Fed. R. Civ. P. 37. As such, there is little the court can do when a party reports that it has made full disclosure.

However, in light of plaintiff's specific information, from the testimony of Carol Hill, that Ms. Hill recalls paying out accrued commissions following the termination of Dan Werner, Christina Verbanic, Tori Morris, and Dusty Workman, the court will instruct defendants to undertake a further search and inquiry, directed specifically to records of any commission pay outs to Dan Werner, Christina Verbanic, Tori Morris, and Dusty Workman, and to produce any additional documents found thereby at the same time it produces documents in response to plaintiff's request numbers 18, 19, 20, and 21, pursuant to this order. The court also reminds defendants that Fed. R. Civ. P. 34(a) does not limit their obligation to produce only documents in their actual possession, but, instead, requires production of documents responsive to plaintiff's requests which are in their "possession, custody, or control."

---

[36] Plaintiff's Reply (Doc. 135), at pp. 3-4.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel (Doc. 105) is hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendants shall, by **August 21, 2006**, serve a supplement to their responses to request numbers 18, 19, 20, and 21, of plaintiff's first request for production of documents, and produce all documents in their possession, custody, or control responsive to plaintiff's requests that concern plaintiff's former employing unit, WIBW Radio, and the years 2000 through 2004.

**IT IS FURTHER ORDERED** that defendants shall, prior to **August 21, 2006**, undertake a further reasonable search and inquiry targeted upon any documents responsive to plaintiff's request number 37, of plaintiff's first request for production of documents, giving specific attention to records related to Dan Werner, Christina Verbanic, Tori Morris, and Dusty Workman, and, on that date, produce to plaintiff any documents discovered thereby.

**IT IS SO ORDERED.**

Dated this 7th day of August, 2006, at Topeka, Kansas.

s/K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge